WALTER S. KIRIMITSU 333-0
 University General Counsel
RUTH I. TSUJIMURA 1860-0
 Deputy General Counsel
RYAN M. AKAMINE 4358-0
 Associate General Counsel
ryan.akamine@hawaii.edu
CHRISTINE TAMASHIRO 7565-0
 Assistant General Counsel
christine.tamashiro@hawaii.edu
University of Hawai'i
2444 Dole Street, Bachman Hall 110
Honolulu, Hawai'i 96822
Telephone:  (808) 956-2211
Facsimile:  (808) 956-2109

Attorneys for Defendants
UNIVERSITY OF HAWAI'I,
KAPIOLANI COMMUNITY COLLEGE,
JILL MAKAGON (incorrectly identified
as Jill Magnagon, nka Jill Abbott) and
MONA LEE

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| JOHN MCALLISTER, | ) | CIVIL NO. CV 04-00625 JMS BMK |
| | ) | |
| Plaintiff, | ) | DEFENDANTS' OPPOSITION TO |
| | ) | PLAINTIFF'S MOTION FOR |
| v. | ) | TEMPORARY RESTRAINING |
| | ) | ORDER AND PRELIMINARY |
| UNIVERSITY OF HAWAI'I; | ) | INJUNCTION (FILED MAY 29, 2006); |
| KAPIOLANI COMMUNITY | ) | DECLARATIONOF MONA LEE; |
| COLLEGE; JANE CALFEE, Instructor | ) | EXHIBITS 1-12; CERTIFICATE OF |
| at Kapiolani Community College; | ) | SERVICE |
| RICHARD DOE, Academic Counselor | ) | |
| at Kapiolani Community College; JILL | ) | Date:  June 5, 2006 |
| MAGNAGON, Director of Academic | ) | Time:  10:00 a.m. |

Counseling at Kapiolani Community )    Judge: Hon. J. Michael Seabright
College; MONA LEE, Dean of Student )
Services at Kapiolani Community )    *Trial date:  August 8, 2006*
College, )
 )
                    Defendants. )
_____ )

04-357/Opp to TRO and Prelim Inj.ct

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (FILED MAY 29, 2006)

Defendants UNIVERSITY OF HAWAI'I ("University"), KAPI'OLANI

COMMUNITY COLLEGE, JILL MAKAGON ("Makagon") (incorrectly

identified as Jill Magnagon, nka Jill Abbott) and MONA LEE ("Lee") (hereinafter

collectively referred to as "Defendants") oppose the Motion for Temporary

Restraining Order and Preliminary Injunction (hereinafter "Motion") filed herein

by Plaintiff John McAllister (hereinafter "Plaintiff") on May 29, 2006.  Plaintiff

petitions this Court for an order:

(1)    enjoining the University from placing a hold on his registration for delinquent loan obligations;

(2)    ordering the School of Social Work [at the University of Hawai'i, Manōa] to disregard all failing grades assigned to Plaintiff;

(3)    reinstating the "original installment monthly plan," and thereby allowing Plaintiff to pay $50 per month on his loan obligations;

(4)    to "unfreeze" Plaintiff's grades, records and transcripts with the University system; and

1

(5)    allowing Plaintiff to transfer to Hawaiʻi Pacific University or be
enrolled into the University of Hawaiʻi, Manōa School of
Social Work.

Memorandum in Points and Authorities ("Memorandum") at 5.

Plaintiff's Motion overlooks longstanding law that injunctive relief is "an

extraordinary and drastic remedy" not to be granted "in a doubtful case." Mazarek

v. Armstrong, 520 U.S. 968, 972 (1997); Sierra Club v. Hickel, 443 F.2d 24, 33

(9th Cir. 1970).  The Motion not only ignores the great reluctance of courts to grant

injunctive relief on unsubstantiated claims like those of Plaintiff here, but also fails

to satisfy the rigorous showing necessary to obtain the extraordinary relief he

seeks.  For the reasons detailed below, the Court should deny Plaintiff's Motion

because Plaintiff fails to sustain his burden of proof to obtain the extraordinary

relief he seeks:  (i) he cannot demonstrate a reasonable likelihood of success on the

merits; (ii) he has failed to demonstrate irreparable injury and (iii) the balance of

hardships tips decidedly in favor of Defendants as they have legitimate and

compelling interests to apply University policies and procedures fairly, uniformly

and objectively to all students who are similarly situated, without regard to a

student's race, gender, age, etc.

## I.    BACKGROUND

Plaintiff filed the instant lawsuit alleging race discrimination by Defendants.

Specifically, Plaintiff claims that while he was a student at Kapiolani Community

College ("KCC") he was denied access to education because of his race as a result of various incidents that allegedly occurred at KCC.  According to Plaintiff's representations in the instant Motion, following his attendance at KCC, he attended Honolulu Community College ("HCC") and more recently, attended the University of Hawai'i, Manōa ("UH Manōa").  In his Motion, Plaintiff contends that the University's alleged actions for which he seeks injunctive relief as described above, are in retaliation for him filing his lawsuit about discrimination against the Defendants in this case.

**A.    Plaintiff's Financial Loans and Delinquency.**

In 2003, while Plaintiff was a student at KCC, he received a total of five (5) financial loans from KCC and from the University of Hawai'i Foundation.  Two loans, one for $2,500.00 and the second for $1,200.00, were made to Plaintiff through a UH Foundation account of KCC (Exhibits 1 and 4) and three loans, each for $300.00, were made to Plaintiff through KCC's short-term loan program (Exhibits 1 and 2).  Thus, the total amount of the loans made to Plaintiff was $4,600.00.  *See* Exhibits 2 and 4.  The two UH foundation loans were due on December 31, 2003 and January 31, 2004, respectively, and the due dates were extended three times, the latest due date being June 30, 2004 on both loans.  Exhibits 1 and 4.  The three short-term KCC loans were due on August 14, 2003, October 18, 2003 and October 25, 2003, respectively.  Exhibits 1, 2 and 3.

Since 2003, Plaintiff has made only two payments, for a total of $150.00, that were applied toward the three short-term KCC loans (Exhibits 3 and 5) each time at the beginning of a semester where he promised Mona Lee that he would continue to make payments such that Mona Lee requested the University's business office to lift the hold on his registration because of Plaintiff's promise to continue making repayments. Exhibit 3. The balance on the three short term loans is $750.00. Exhibit 3. Since 2003, Plaintiff has made two payments, for a total of $100.00, that were applied toward his UH Foundation loans (Exhibit 5), thus leaving a balance of $3,600.00 on those loans. KCC did not assess any interest on the five loans made to Plaintiff. Exhibit 1.

Since 2003, Mona Lee and the KCC business office have made several attempts via correspondence, meetings, and verbal discussions with Plaintiff to have him repay his outstanding loans. Exhibits 1 and 3. Following her letter to Plaintiff dated September 30, 2004 regarding his delinquent loans (Exhibit 1), Mona Lee subsequently met with Plaintiff, and on October 27, 2004 (Exhibit 1, page 2), Plaintiff executed the Promissory Note promising to repay his loans in accordance with the repayment schedule contained therein. The repayment schedule in the Promissory Note was handwritten by Plaintiff himself. Plaintiff has failed to make payments in accordance with the repayment schedule to which he agreed.

Plaintiff claims that for the past two years, KCC and Defendant Mona Lee were satisfied with payments from him in the sum of $50 monthly installments, and that he has paid down his debt of $1,200 to $750.00. Memorandum at 1-2. If in fact Plaintiff had made timely and consistent payments of $50 per month, then the present balance due on his loans would be significantly lower than $750 ($50/month x 24 months = $1,200.00). Thus, if Plaintiff had been making payments as he now claims, his current balance would be $3,400.00 ($4,600 - $1,200.00). In fact, Plaintiff's current outstanding balance on his loans is $4,350.00, not including interest.

**B.    University's Policy Regarding Delinquent Financial Obligations.**

University Policy A8.731 issued by the Treasury Office (Exhibit 6) is applicable in circumstances involving delinquent financial obligations involving the University. Paragraph 6.d. and 6.f. of the policy provide in part:

> 6.d.    The University shall withhold services from persons with delinquent financial obligations, **including the denial of registration**. The university shall inform the person of the nature and amount of the financial obligation and provide the person with the sanctions the University may impose if the obligation is not paid or arrangements for repayment acceptable to the University are not made.
>
> * * *
>
> 6.f.    If the person settles the delinquent financial obligation to the satisfaction of the University, or if the person files the appropriate form requesting a hearing, the University shall permit registration.

Exhibit 6 at 3-4 (emphasis added).  Thus, there is a university-wide policy pursuant

to which a hold was placed on Plaintiff's registration because he was delinquent in

repaying his financial loans.  The decision to place a hold on his registration was

not within Mona Lee's discretion nor within her control, and is in fact, enforced by

KCC's Business Office and other university offices.  *See* Exhibit 3.  In addition,

Plaintiff himself acknowledged, and was also notified on several occasions, that if

he did not repay his loans, a financial obligation hold would be placed on his

registration or account.  *See* Exhibit 1 at page 2, Exhibit 2, and Exhibit 3 at page 4.

**C.    Plaintiff's Motion is Replete with Inaccurate Representations and Assumptions and is Misleading.**

Plaintiff's summary of the claims currently pending in this lawsuit is

misleading.  *See* Memorandum at 6-7.  The claims alleged in Plaintiff's Complaint

were the following:

1.   Violation of Fourteenth Amendment, Title VI, § 901(a), 20 U.S.C. § 161(a) [sic]
2.   Intentional Infliction of Emotional Distress
3.   Violation of 42 U.S.C. §§ 1981 & 1981A
4.   Violation of 42 U.S.C. § 1983
5.   Violation of 42 U.S.C. § 1985
6.   Punitive Damages

Following a court approved stipulation on May 16, 2005 and the Court's Order

Granting in Part and Denying in Part Defendants' Motion for Judgment on the

Pleadings, entered on October 26, 2005, the following are the claims currently

pending in this lawsuit:

    A.     As to Defendant UH:  Cause of Action 1

    B.     As to Defendants Calfee, Makagon and Lee (in their official capacities):  Causes of Action 3, 4 and 5 (but only to the extent that Plaintiff seeks prospective relief against them)

    C.     As to Defendants Calfee, Makagon and Lee (in their individual capacities):  Causes of Action 3, 4, 5, and 6.

Plaintiff also makes other misrepresentations and unsupported statements in his Declaration.  For example, Plaintiff states that his current grade point average ("GPA") since leaving KCC is 3.33.  Plaintiff's Declaration at ¶ 12.  Plaintiff further concludes his current 3.33 GPA since leaving KCC supports the notion that KCC administrators were racially bigoted and were the cause of his alleged problems at KCC.  *Id*.  In fact, the claimed 3.33 GPA was only Plaintiff's current GPA for the Fall 2005 semester he attended at HCC.  His cumulative GPA at HCC was 2.44.  He attended only one semester at UH Manōa, therefore his cumulative GPA there was 3.01.  Plaintiff also claims that on May 12, 2006 he graduated from HCC with a 3.0 GPA.  Plaintiff's Declaration at ¶ 19.  The transcript from HCC reflects that the last semester attended by Plaintiff at HCC was Fall 2005.  Exhibit 11.  In Spring 2006, Plaintiff was enrolled at UH Manōa .  Exhibit 12.  Neither a copy of Plaintiff's diploma from HCC nor his grades from HCC were attached to his Motion as he claimed in his Declaration.

## II.    ARGUMENT

### A.    Temporary Restraining Orders and Preliminary Injunctions are Extraordinary Remedies Designed to Preserve the Status Quo

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original). The standards for granting a temporary restraining order and a preliminary injunction are identical. Arakaki v. Cayetano, 198 F. Supp. 2d 1165, 1173 (D. Haw. 2002); Honolulu Weekly, Inc. v. Harris, 79 F. Supp. 2d 1186, 1193 (D. Haw. 1999), rev'd and remanded on other grounds, 298 F.3d 1037 (9th Cir. 2002). As an extraordinary and drastic remedy, preliminary injunctions should only be granted "where the plaintiff shows 'convincing proof of harm.'" Mayview Corp. v. Rodstein, 480 F.2d 714, 718 (9th Cir. 1973) (quoting Dymo Indus., Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964)). "The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in . . . case[s] clearly warranting it." Id. at 718. For these reasons, "'it is a cardinal principle . . . that a preliminary injunction shall not issue in a doubtful case.'" Sierra Club v. Hickel, 433 F.2d 24, 33 (9th Cir. 1970) (quoting Hall Signal Co. v. General Ry. Signal Co., 153 F. 907, 908 (2d Cir. 1907).

In order to obtain a preliminary injunction, Plaintiff must prove either: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious

questions going to the merits to make the case a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting relief. Honolulu Weekly, Inc., 79 F. Supp. 2d at 1193-94; Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998); Topange Press, Inc. v. City of Los Angeles, 989 F.2d 1524, 1528 (9th Cir. 1993), *cert. denied*, 511 U.S. 1030 (1994).

The two separate routes for proving an entitlement to preliminary injunctive relief represent points on a sliding scale or a single continuum, with the plaintiff having to prove greater irreparable harm as the likelihood that the plaintiff will prevail on the merits of his claim decreases. Honolulu Weekly, Inc., 79 F. Supp. 2d at 1194 and cases cited therein. Under any formulation, the moving part must demonstrate a "significant threat of irreparable injury." Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). A plaintiff must do more than merely allege imminent harm sufficient to establish standing; he or she must demonstrate immediate threatened injury as a prerequisite to injunctive relief. Associated Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied*, 503 U.S. 985 (1992). In addition, where the public interest is involved, "a district court must examine whether that public interest favors the plaintiff." Id. at 1194 (citing Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992)).

**B.**    **Plaintiff's Motion Should Be Denied Because It Seeks to Change the Status Quo.**

Courts have repeatedly acknowledged that "[t]he basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." Chalk v. United States Dist. Ct. Cent. Dist. Cal., 840 F.2d 701, 704 (9th Cir. 1988). When the plaintiff is using a preliminary injunction to try to "change the status quo," the motion for preliminary injunctive relief is subject to "heightened" scrutiny. Salt Lake City Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003). Injunctive relief that goes beyond maintaining the status quo is "particularly disfavored and should not be issued unless the facts and law clearly favor the moving party." Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979).

Here, Plaintiff seeks injunctive relief that goes beyond maintaining the status quo. The University fairly and objectively applies its policies and procedures relating to students who either apply for admission or register for courses at any of the University of Hawai'i campuses. Plaintiff seeks injunctive relief to force the University to change the way it applies its policies and procedures such that the Plaintiff is given preferential treatment over other students in similar circumstances. The relief which Plaintiff seeks, if granted, would (1) require the University to essentially ignore the fact the Plaintiff is in default on his loan obligations and disregard university-wide policies that are applicable in such

circumstances, (2) require the Court to dictate to the UH Manōa School of Social Work how and what it should consider in determining which applicants will be accepted by the School as candidates for its degreed program, and (3) require the Defendants to do things which are not within its control, i.e. allow Plaintiff to transfer to Hawaiʻi Pacific Univeristy or enroll into the UH Manōa  School of Social Work.  "[C]ourts are more reluctant to grant a mandatory injunction than a prohibitory one and . . . generally an injunction will not lie except in prohibitory form.  Such mandatory injunctions, however, are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."  <u>Anderson v. U.S.,</u> <i>infra</i>, at 1115.  Because such a proactive modification of the status quo is especially disfavored, and because Plaintiff fails to establish that the facts and the law are clearly in his favor, his Motion must be denied.

Rather than seek to maintain the status quo, Plaintiff attempts to change it – an impermissible use of a preliminary injunction.  Plaintiff will not suffer irreparable harm.  If Plaintiff is able to substantiate his speculative claim for damages, he can be compensated, if at all, with money damages, which would preclude a finding of irreparable injury to warrant an injunction.  The Motion, if granted, would substantially undermine Defendants' operations and the consistency it maintains in applying its policies and procedures fairly and equally

11

to all individuals in the same circumstances.

### C.    Plaintiff Cannot Show a Reasonable Likelihood of Success on the Merits and the Motion Must Therefore Be Denied.

While Plaintiff's Motion contains a regurgitation of his complaint

allegations and arguments submitted in previous pleadings, Plaintiff's case and his

request for injunctive relief in this Motion are only properly about the University's

alleged actions relating to an alleged hold on Plaintiff's registration, an alleged

hold on his transcripts, and the School of Social Work's consideration of Plaintiff's

application to the School of Social Work at UH Manōa.  Plaintiffs have no

likelihood of success on the merits of their claims. "If the plaintiff shows no

chance of success on the merits, the preliminary injunction should not issue."

Honolulu Weekly, Inc., 79 F. Supp. 2d at 1194.  It is unclear exactly what

Plaintiff's claims in this Motion are, but to the extent that Plaintiff is claiming that

he has been discriminated against or retaliated against by Defendants because of

his lawsuit, Plaintiff cannot demonstrate a reasonable likelihood of success on

these clams.  Each of the remedies sought by Plaintiff are addressed below.

### 1.    *Plaintiff seeks to enjoin the University from placing a hold on his registration for delinquent loan obligations.*

The University's policies and procedures applicable to circumstances

involving delinquent financial obligations, such as Plaintiff's outstanding loans, are

neutral with respect to a person's race or national origin and are completely

objective.  The policy is applied fairly and objectively to all students with financial

obligations to the University.  Here, Plaintiff was notified that his failure to repay

his loans would result in a financial hold being placed on his registration.  Despite

being so notified on several different occasions, Plaintiff failed to repay his loans,

thus triggering the application of the policy.  Exhibit 6.  Defendant Mona Lee did

not arbitrarily place a hold on Plaintiff's registration nor did she have any control

over the KCC Business' Office's operations in enforcing the university policy to

collect on the loans issued to Plaintiff.  With respect to the financial hold placed on

his registration, Plaintiff cannot demonstrate the reason for a hold being placed on

his registration was the result of any discrimination or retaliation by the

Defendants.

> ### 2. *Plaintiff seeks to order the School of Social Work [at the University of Hawai'i, Manōa] to disregard all failing grades assigned to Plaintiff.*

To the extent that Plaintiff is claiming that the alleged "F" grades were

assigned to him because of some discriminatory or retaliatory basis on the part of

Defendants, or because an "administrative withdrawal" was not implemented,

Plaintiff cannot demonstrate a likelihood of success on the merits of his claims.

While Chancellor John Morton did propose to Plaintiff via a letter dated May 1,

2003 (Exhibit 7 and Plaintiff's Exhibit B) that Plaintiff would be "administratively

withdrawn" from the Math 24 and FAMR 230 courses without penalty, the

proposal was rejected by Plaintiff. Plaintiff rejected the option of being "administratively withdrawn" from those courses because it would affect the benefits he received from the Veterans Administration ("VA"). *See* Exhibit 8. Instead, Plaintiff opted to and was allowed to "retake" the two courses during the summer session in 2003. *Id.* Thus, Plaintiff was given "I/F" grades for those two courses in the Spring 2003 semester (Exhibits 7 and 8) and those grades would be replaced by the grades he received for those courses in the summer session. The "C" grade Plaintiff received for Math 24 in Summer 2003 replaced the "I/F" grade that was temporarily assigned to the Math 24 course in Spring 2003. See Exhibits 9 and 10. Plaintiff did not complete the work for the FAMR 230 course in Summer 2003 despite being given extensions of time to complete the coursework, thus, the transcript for Spring 2003 continues to reflect the "I/F" grade. As noted in the advising document transcript (Exhibit 10), there is no record of the Math 24 and FAMR 230 courses reflected for the Summer 2003 session. As to Plaintiff's claims that "F" grades "are not supposed to transfer" and "should not be following him around to other campuses" (Plaintiff's Declaration at ¶6 and 15), there is no basis for his claims. Defendants never agreed that "F" grades would never be reflected on Plaintiff's transcripts.

       3.     ***Plaintiff seeks to reinstate the "original installment monthly plan," and thereby allow Plaintiff to pay $50 per month on his loan obligations.***

Plaintiff offers no evidence to support an "original installment monthly plan" which permitted him to pay $50 per month on his loan obligations. Each of the five loans were due on the dates agreed upon in Plaintiff's agreements and/or promissory notes for each loan. Exhibits 2 and 4. At most, Plaintiff executed a Promissory Note on October 27, 2004 agreeing to pay $50 per month from 11/04 to 10/05. Exhibit 1 at page 2. Thus, Plaintiff should have been paying $50 per month up until October 2005. Pursuant to that agreement, he is now required to pay $100 per month from 11/05-10/06. Thereafter, the monthly amounts increase to $150 per month and $300 per month. Thus, Plaintiff is unlikely to succeed on the merits of his claim to establish that a $50 monthly installment plan should be reinstated.

### 4. *Plaintiff seeks to "unfreeze" Plaintiff's grades, records and transcripts with the University system.*

As described in part III, paragraph 1 above, the neutral application of the University policy relating to delinquent financial transactions allows the University to place a financial hold on registration, which in turn triggers a hold on the issuance of official, certified copies of transcripts, until the delinquency is cured. However, if Plaintiff needs transcripts for his applications to Hawaiʻi Pacific University or other educational institutions, Mona Lee could provide him with "advising documents" of his transcript (Exhibits 10-12), which are essentially his transcripts, but without KCC's seal of certification on them.

In any event, if Plaintiff desired to challenge the hold on registration or "freeze" on his transcripts, he should have utilized the grievance or appeal process outlined in University policy A8.731 on delinquent financial transactions.  (Exhibit 6 at p.6).  A preliminary injunction motion before this Court is not the proper mechanism for Plaintiff to challenge any disagreements he has with the policy and results of its application on his registration or transcripts.  Nonetheless, the policy is enforced objectively without regard to Plaintiff's race or the fact that he presently has a lawsuit pending against Defendants.

> **5.    *Plaintiff seeks to have the Court order his transfer to Hawai'i Pacific University or be enrolled into the University of Hawai'i, Manōa School of Social Work.***

Defendants have no control over Hawai'i Pacific University's decision to accept or deny Plaintiff's transfer, nor do Defendants have any control over the criteria and decisions made by the UH Manōa School of Social Work to allow Plaintiff to be enrolled into the School of Social Work.  Based on Plaintiff's Exhibit C, it appears that Plaintiff was not accepted by the School of Social Work because he was not qualified.  Indeed, that exhibit demonstrates that there were areas of primary concern, which *Plaintiff failed to address* in his application to the School, that were the bases for him not being accepted by the School of Social Work.

**D.    Plaintiff Will Not Suffer Irreparable Injury If His Motion for Preliminary Injunction Is Denied**

Irreparable injury is the touchstone upon which such relief must rest.   The moving party must demonstrate that the irreparable injury claimed is both serious and immediate; speculation or the mere threat of injury is not sufficient. *See* Hawaii County Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997). The party seeking prospective injunctive relief "must show that [he] 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged [] conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural or hypothetical.' " City of Los Angeles v. Lyons, 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Despite his unsupported assertions to the contrary, Plaintiff will not suffer any irreparable injury if the preliminary injunction is denied.  As his sole injury, Plaintiff asserts that he is being "prevented from matriculating in college classes at universities, who demand a copy of Plaintiff's transcripts, which Defendants are witholding" and that he has suffered "irreparable harm to his career as a college student and prospective graduate and employed social worker."  Memorandum at 1-2.   Plaintiff's allegations of damages are without merit, and are speculative. First, the University does not withhold transcripts from other universities who request them, if the request complies with University procedures.  Secondly, Plaintiff's claim that "his career as a prospective graduate and employed social

17

worker" has been harmed because of Defendants' alleged actions is purely speculative. Plaintiff's Exhibit C reflects that there were several reasons why he was not accepted by the School of Social Work, and not because of the grades from Kapiolani Community College courses that he contends should not have been reflected in his transcript. Plaintiff apparently failed to provide the School of Social Work with adequate information for consideration. The fact of the matter is that Plaintiff was simply not qualified for admission to the School of Social Work. Moreover, Plaintiff has been urged to reapply for the next semester and was even given specific pointers regarding areas he should address in his future application. *See* Plaintiff's Exhibit C. Furthermore, assuming Plaintiff was admitted into the School of Social Work, there is no evidence that Plaintiff would have successfully completed the program and qualified for the degree or that that Plaintiff would have been employed as a social worker. Thus, Plaintiff's claims of damages, without any factual basis, are pure speculation. Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir.1984). "Speculative injury does not constitute irreparable injury." *Id.* citing Wright and Miller, 11 Federal Practice and Procedure 2948 at 436 (1973). Because Plaintiff's only alleged injury is the harm to his college career and as an employed social worker, and is a loss – if proved, that can be remedied through money damages, there is no irreparable injury to Plaintiff.

**E.    The Balance of Hardships Weighs Strongly in Favor of Defendants and Warrants Denial of the Motion.**

Once a determination has been made regarding irreparable harm and the likelihood of success on the merits, courts are instructed to conduct a balancing test to weigh the respective hardships on all interested parties. *E.g.*, <u>Arakaki v. Cayetano</u>, 198 F. Supp. 2d 1165, 1173 (D. Haw. 2002). Like the irreparable harm analysis, the hardship suffered must be imminent and real, rather than imagined or speculative. *See, e.g.*, <u>Atari Corp. v. Sega of Am.</u>, 869 F. Supp. 783, 792 (N.D. Cal. 1994) (finding that balance of hardship tipped against a party who demonstrated mere "speculative possibility of irreparable harm"). Here, the balance of hardships tips decidedly in favor of Defendants as they have legitimate and compelling interests to apply University policies and procedures fairly, uniformly, and objectively to all students who are similarly situated, without regard to a student's race, gender, age, etc. Allowing the remedies sought by Plaintiff's Motion will adversely impact the University's policies and operations, and imposes a hardship on Defendants. Moreover, there is a substantial public interest in ensuring that the University's policies are applied fairly and equally to all similarly students without any regard to a person's race, gender, age, etc. Plaintiff seeks to disrupt the objective application of the University's policies and asks this Court to order the University to treat Plaintiff differently than other students who are similarly situated.

### III.  CONCLUSION.

For all the reasons set forth above, Defendants respectfully request that

Plaintiff John McAllister'S Motion for Temporary Restraining Order and

Preliminary Injunction, filed on May 29, 2006, be denied.

Dated: Honolulu, Hawaii, ___June 2, 2006_____.


_____
RUTH I. TSUJIMURA
RYAN M. AKAMINE
CHRISTINE TAMASHIRO
Attorneys for Defendants
UNIVERSITY OF HAWAIʻI,
KAPIʻOLANI  COMMUNITY
COLLEGE, JILL MAKAGON
(incorrectly identified as Jill
Magnagon, nka Jill Abbott) and
MONA LEE

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| JOHN MCALLISTER, | ) CIVIL NO. CV 04-00625 JMS BMK |
| | ) |
| Plaintiff, | ) DECLARATION OF |
| | ) MONA LEE |
| v. | ) |
| | ) |
| UNIVERSITY OF HAWAI'I; | ) |
| KAPIOLANI COMMUNITY | ) |
| COLLEGE; JANE CALFEE, Instructor at | ) |
| Kapiolani Community College; | ) |
| RICHARD DOE, Academic Counselor at | ) |
| Kapiolani Community College; JILL | ) |
| MAGNAGON, Director of Academic | ) |
| Counseling at Kapiolani Community | ) |
| College; MONA LEE, Dean of Student | ) |
| Services at Kapiolani Community | ) |
| College, | ) |
| Defendants. | ) |
| | ) |

## <u>DECLARATION OF MONA LEE</u>

MONA LEE, hereby states and declares that:

1.    I am a party to the above-captioned case and the Dean of Students at

Kapiolani Community College ("KCC").

2.    I have personal knowledge of the facts set forth in this Declaration,

except where facts are alleged upon information and belief.

1

3.      Attached hereto as Exhibit "1" is a true and correct copy of a letter I wrote to John McAllister dated September 30, 2004 and a Promissory Note which Mr. McAllister executed in my presence on October 27, 2004.

4.      Attached hereto as Exhibit "2" are true and correct copies of three (3) short-term loans given to Mr. McAllister by KCC, each in the amount of $300.00

5.      Attached hereto as Exhibit "3" are true and correct copies of the balance sheet for Mr. McAllister's three short-term loans from KCC, notices of outstanding invoice from KCC dated July 11, 2005 and November 10, 2005, and a letter from Mona Lee to Mr. McAllister dated September 26, 2005.

6.      Attached hereto as Exhibit "4" are true and correct copies of Promissory Notes executed by John McAllister for the two (2) loans given to him through the UH Foundation account of KCC.

7.      Attached hereto as Exhibit "4" are true and correct copies of Promissory Notes executed by John McAllister for the two (2) loans given to him through the UH Foundation account of KCC.

8.      Attached hereto as Exhibit "5" is a true and correct copy of my office's notes regarding a payment schedule indicating payments received by John McAllister.

9.      Attached hereto as Exhibit "6" is a true and correct copy of University Policy A8.731 regarding delinquent financial obligations.

10.    Attached hereto as Exhibit "7" are true and correct copies of a letter from John Morton to John McAllister dated May 1, 2003 and an email I sent to John Morton and others relating to John McAllister. .

11.    Attached hereto as Exhibit "8" is a true and correct copy of my email message dated May 13, 2003 relating to John McAllister.

12.    Attached hereto as Exhibit "9" is a true and correct copy of my memorandum to Cindy Suzuki, Registrar at KCC, dated July 18, 2003.

13.    Attached hereto as Exhibit "10" is a true and correct copy of the "Advising Document" or unofficial transcript for John McAllister at KCC.

14.    Attached hereto as Exhibit "11" is a true and correct copy of the "Advising Document" or unofficial transcript for John McAllister at Honolulu Community College.

15.    Attached hereto as Exhibit "12" is a true and correct copy of the "Advising Document" or unofficial transcript for John McAllister at the University of Hawai'i, Manōa .

I declare under penalty of law that the foregoing is true and correct.

Executed at Honolulu, Hawai'i on ___June 2, 2006_____.

<br>

_____

MONA LEE

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| JOHN MCALLISTER, | ) CIVIL NO. CV 04-00625 JMS BMK |
| | ) |
| Plaintiff, | ) CERTIFICATE OF SERVICE |
| | ) |
| v. | ) |
| | ) |
| UNIVERSITY OF HAWAI'I; | ) |
| KAPIOLANI COMMUNITY | ) |
| COLLEGE; JANE CALFEE, Instructor at | ) |
| Kapiolani Community College; | ) |
| RICHARD DOE, Academic Counselor at | ) |
| Kapiolani Community College; JILL | ) |
| MAGNAGON, Director of Academic | ) |
| Counseling at Kapiolani Community | ) |
| College; MONA LEE, Dean of Student | ) |
| Services at Kapiolani Community | ) |
| College, | ) |
| Defendants. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on the dates noted below a true and correct copy

of the foregoing document was duly served upon the following electronically

through CM/ECF, by hand-delivery, or by United States first class mail (M),

addressed as follows:

*Served Electronically through CM/ECF:*

ANDRE S. WOOTEN, ESQ.                                        June 2, 2006
Email address:  Andre@AttyAndreWooten.com

     Attorney for Plaintiff JOHN MCALLISTER

1

JOHN T. KOMEIJI, ESQ.                              June 2, 2006
GREGG M. USHIRODA, ESQ.
KAREN Y. ARIKAWA
Email address:  karikawa@wik.com

     Attorneys for Defendant JANE CALFEE

*Served by U.S. First Class Mail:*
  N/A

*Served by Hand-Delivery:*
  N/A

     DATED:    Honolulu, Hawaiʻi, _____ June 2, 2006 _____.


               _____
               RUTH I. TSUJIMURA
               RYAN M. AKAMINE
               CHRISTINE TAMASHIRO
               Attorneys for Defendants
               UNIVERSITY OF HAWAIʻI,
               KAPIʻOLANI COMMUNITY
               COLLEGE, JILL MAKAGON
               (incorrectly identified as Jill
               Magnagon, nka Jill Abbott) and
               MONA LEE