IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN MCALLISTER, | ) | CIV. NO. 04-00625JMS-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY OF HAWAII; | ) | ORDER DENYING MOTION FOR |
| KAPIOLANI COMMUNITY | ) | TEMPORARY RESTRAINING |
| COLLEGE; JANE CALFEE, | ) | ORDER |
| Instructor at Kapiolani Community | ) | |
| College; RICHARD DOE, Academic | ) | |
| Counselor at Kapiolani Community | ) | |
| College; JILL MAGNAGON, | ) | |
| Director of Academic Counseling at | ) | |
| Kapiolani Community College; | ) | |
| MONA LEE, Dean of Student | ) | |
| Services at Kapiolani Community | ) | |
| College, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

On May 29, 2006, Plaintiff John McAllister filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking an order requiring Defendant Kapiolani Community College ("KCC") to lift the hold on his transcript and registration so that he can enroll in summer school or apply for admission to another university. On June 1, 2006, Defendant Jane Calfee filed an

opposition to McAllister's motion. On the following day, June 2, 2006, Defendants University of Hawaii, KCC, Jill Makagon, and Mona Lee (collectively, "University Defendants") filed an opposition to McAllister's motion. On June 5, 2006, the court held a hearing on McAllister's motion.

After reviewing the moving papers, the supporting and opposing memoranda, the arguments of counsel, and the evidence presented at the June 5, 2006 hearing, the court DENIES McAllister's motion.[1]

## I. BACKGROUND

In his Complaint filed October 19, 2004, McAllister alleges that he was discriminated against on the basis of his race while attending KCC. McAllister now alleges that Calfee and the University Defendants are retaliating against him for filing his lawsuit by placing a hold on his ability to register for classes or receive official transcripts. The parties agree that this hold prevents McAllister from enrolling in summer school at the University of Hawaii and from applying to transfer to Hawaii Pacific University.

---

[1] McAllister's motion is titled "Motion for Temporary Restraining Order and Preliminary Injunction." The court scheduled a hearing on the motion on an expedited basis and limited evidence was presented. The parties have not addressed whether the court should treat this motion as a motion for a temporary restraining order ("TRO") or a motion for preliminary injunction. Given the expedited nature of the proceeding, the court will treat McAllister's motion as a motion for a TRO. If McAllister wishes to pursue a preliminary injunction on this matter, he should file an appropriate motion with the court.

The University Defendants and Calfee contend that a hold was placed on McAllister's account pursuant to University policy after McAllister repeatedly failed to make payments on debts he owed to KCC and the University of Hawaii Foundation. The University Defendants presented evidence that McAllister had been issued a total of five loans: one loan for $2,500 and one loan for $1,200, both from the University of Hawaii Foundation, and three short term loans from KCC, each for $300.

The University Defendants also presented evidence that McAllister did not pay back these loans as agreed. On October 27, 2004, after the due dates for each of the five loans had expired, McAllister signed another promissory note in which he appears to promise to pay a total of $4,400 over the next four years.[2] University Defendants' Ex. 4. McAllister was required to make payments of $950 between November 2004 and May 2006, assuming that the University extended the first phase of the Repayment Schedule and allowed him to continue to make

---

[2]The note contains a "Repayment Schedule" which states that McAllister will pay $50 per month from November 2004 through October 2005, $100 a month from November 2005 through October 2006, $150 per month from November 2006 through October 2007, and $200 per month from November 2005 through March 2008. The last entry appears to be an error. If November 2007 is substituted for November 2005 under the Schedule where it calls for $200 per month payments, the total payments under the Schedule would equal $4,600, the total amount the University Defendants allege that McAllister has borrowed. McAllister testified during the hearing that he signed this promissory note and that the "Repayment Schedule" was written in his own handwriting.

3

$50 per month payments beyond the first year of the plan. During that period, however, the University Defendants' records indicate that he made only four payments: three payments of $50 and one payment of $100. University Defendants' Ex. 5. The last payment was made on January 9, 2006. *Id.* KCC sent McAllister several letters in 2005 requesting payment. University Defendants' Ex. 3.

        The University Defendants also presented evidence that they followed their internal regulations when they placed a hold on McAllister's account. University Policy A8.731 issued by the Treasury Office directs that "The University shall withhold services from persons with delinquent financial obligations, including the denial of registration." University Defendants' Ex. 6 at ¶ 6.d. The University contends that it merely applied its policy when it placed a hold on McAllister's account, preventing him from registering or obtaining transcripts.

        McAllister testified that he took out three short term loans for $300 each from KCC, but he disputed receiving loans from the University of Hawaii Foundation. While McAllister acknowledged that his signature appears on promissory notes for the alleged loans, he maintains that the money he received was grant money rather than loan money. He also stated that Defendant Mona Lee

4

called him about his late payments, encouraged him to make more payments at $50, and assured him that KCC understood his financial situation.

McAllister's motion also asserts that the "F" grades he obtained at KCC should not have appeared on his transcript when he applied to the University of Hawaii School of Social Work. Counsel for McAllister conceded at the hearing that McAllister will not reapply to the School of Social Work until next year and therefore the issue of the "F" grades on McAllister's transcript need not be resolved at this stage. The court therefore does not address the issue of the "F" grades in this order.

## II.  LEGAL STANDARD

The standard for granting a temporary restraining order is the same for that of a preliminary injunction. *Hawaii County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997). In order for a court to grant either relief, a party must demonstrate: "a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993). Courts have reasoned that these two formulations represent two points on a sliding scale, with the

required degree of irreparable harm increasing as the probability of success decreases. *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994). The formulations are not considered separate tests, but the extremes of a single continuum. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

### III.  ANALYSIS

McAllister has not demonstrated a likelihood of success on the merits, nor has he raised serious questions going to the merits of the case. McAllister contends that Calfee and the University Defendants placed a hold on his transcript and registration in retaliation for the lawsuit that he filed against them. He has presented no compelling evidence, however, that Calfee or the University Defendants are retaliating against him.

McAllister's motion and testimony at the hearing focused on the amount of the alleged loans. McAllister admits that he owes KCC $750 for the three short term loans he obtained in 2003. He disputes the loans from the University of Hawaii Foundation and insists instead that the funding he received was a grant. The court need not ascertain the exact amount of McAllister's debt,

however, because the decision to place a hold on his account was justified under University policy regardless of the total amount of his debt.[3]

It is undisputed that McAllister took out $900 in short term loans from KCC in 2003. He admits to entering into a repayment plan with the University whereby he promised to pay $50 a month on the loans. Since entering into that agreement he has paid only $150 toward the short term loans, leaving a balance of $750.[4] The University's records indicate that the last payment he made pursuant to the payment plan was in January 2006. University Defendants' Ex. 5. The University has a policy whereby students are denied the services when they fail to pay on their account as agreed. After attempting to accommodate McAllister through a graduated payment plan, the University eventually placed a hold on McAllister's account when he continued to miss payments.

---

[3]The court notes, however, that the promissory notes submitted by the defendants indicate that McAllister signed for loans from the University of Hawaii Foundation in the amounts of $2,500 and $1,200. The October 27, 2004 promissory note's Repayment Schedule strongly suggests that McAllister understood that the funds received from the University of Hawaii Foundation were in fact loans and not grants. McAllister has not introduced evidence to support his understanding that these disbursements were grants rather than loans.

[4]The University Defendant's records reflect that McAllister has paid a total of $250 toward his loans, $150 of which has been allocated to McAllister's $900 in short term loans. McAllister does not dispute that he owes $750. If the additional $100 payment were allocated to his short term loans, however, his balance would be $650 instead of $750. The exact balance remaining on these loans does not affect the court's conclusions.

McAllister's only evidence that the University Defendants and Calfee are retaliating against him is that Mona Lee, a defendant in this action, has dealt with him personally in an effort to resolve his debts to KCC. McAllister asks the court to infer from this fact alone that the University Defendants and Calfee are retaliating against him rather than simply applying the policy on delinquent accounts. He provides no evidence, however, that Mona Lee's involvement in this matter was inappropriate or in any way unusual. Given the attempts of the University to accommodate McAllister, his repeated missed payments, and the clear policy that applies to delinquent accounts, the court finds that an inference of retaliation from Mona Lee's involvement is unwarranted on this record.

//
//
//
//
//
//
//
//
//

Because the court finds that McAllister is unlikely to succeed on his retaliation claim and that he has not raised serious questions going to the merits of his claim, the court need not reach the issue of irreparable harm.

IV.  CONCLUSION

For the reasons stated herein, McAllister's motion is DENIED.

IT IS SO ORDERED

DATED: Honolulu, Hawaii, June 7, 2006.



J. Michael Seabright
United States District Judge

*McAllister v. University of Hawaii, et al.,* Civ. No. 04-00625 JMS/BMK, Order Denying Motion for Temporary Restraining Order